957 A.2d 213 (2008)
403 N.J. Super. 80
George MARAGLIANO, Plaintiff-Appellant,
v.
LAND USE BOARD OF the TOWNSHIP OF WANTAGE and B. Robert McEwan, Defendants-Respondents, and
Joseph Maggio, LLC, Defendant.
Dcoket No. A-6526-06T1
Superior Court of New Jersey, Appellate Division.
Submitted September 9, 2008.
Decided October 6, 2008.
Richard J. Abrahamsen, Englewood, for appellant.
Feeney & Dixon, Pompton Plains, for respondent B. Robert McEwan (David C. Dixon, of counsel and on the brief).
Weiner Lesniak, Parsippany, for respondent Land Use Board of the Township of Wantage (Bryant Gonzalez, on the brief).
Before Judges SKILLMAN, COLLESTER and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This is an appeal from a final judgment entered on March 15, 2007, which dismissed plaintiff's complaint challenging the land use approval issued by defendant Land Use Board of the Township of Wantage to defendant B. Robert McEwan.
*214 On May 10, 2003, the Land Use Board adopted a re-examination of its master plan. Among the stated goals of the Master Plan was to maintain the Township's rural character.
On May 29, 2003, the Mayor and Council of Wantage Township introduced Ordinance 2003-07, under which the zoning ordinance would be amended to implement the new master plan. After a hearing, the Mayor and Council adopted the ordinance on June 26, 2003, with an effective date of August 15, 2003. One of the changes in zoning provided under this ordinance was an increase in the minimum lot size in the R-1 zone from 40,000 square feet to five acres.
Four days after the adoption of this new zoning ordinance, McEwan, the contract purchaser of a thirty-one acre parcel of land in the R-1 zone, applied to the Land Use Board for a subdivision approval. McEwan proposed the consolidation of two existing lots and the subdivision of the resulting combined lot into four new lots. Two of those proposed new lots were less than five acres.
McEwan applied for bulk variances from the lot width requirements provided under the former zoning ordinance for the two proposed larger lots, which are flag lots.[1] However, he did not apply for a variance from the five-acre minimum lot size requirement established by the new zoning ordinance as applied to the other two lots, one of which is 2.44 acres and the other of which is 4.24 acres.
On August 12, 2003, three days before the effective date of the new zoning ordinance, the Land Use Board approved McEwan's subdivision application. The Board did not adopt a resolution formalizing this approval until more than three months later, on November 25, 2003.
Thereafter, plaintiff, the owner of a property adjoining the McEwan property, brought this action in lieu of prerogative writs challenging the Land Use Board's approval of McEwan's subdivision application. Plaintiff claimed, among other things, that McEwan's proposed subdivision was subject to the provisions of the new zoning ordinance, including the requirement of a five-acre minimum lot size, and that McEwan had not obtained variances from that requirement.
This case has had a protracted and convoluted procedural history, which it is unnecessary to recount in order to decide this appeal. Suffice it to say that the trial court rejected all of plaintiff's arguments regarding the subdivision approval granted to McEwan, including the argument that under the "time of decision" rule McEwan's application should have been reviewed under the provisions of the new zoning ordinance.
We conclude that McEwan's subdivision application was governed by the new zoning ordinance and therefore it could not be approved unless he established his entitlement to variances from the requirements of that ordinance, including the five-acre minimum lot size requirement. Consequently, we reverse the judgment of the trial court dismissing plaintiff's complaint and remand for entry of judgment in plaintiff's favor.
Under the time of decision rule, an agency or reviewing court will apply the law in effect at the time of its decision rather than the law in effect when the issues were initially presented. See Manalapan Realty, L.P. v. Twp. of Manalapan, *215 140 N.J. 366, 378-79, 658 A.2d 1230 (1995); Riggs v. Twp. of Long Beach, 101 N.J. 515, 521, 503 A.2d 284 (1986). Thus, "[i]n the area of land use, a municipality may change its regulating ordinances after an application has been filed and even after a building permit has been issued and, as long as the applicant has not substantially relied upon the issuance of the building permit, it is subject to the amended ordinance." Burcam Corp. v. Planning Bd. of Medford, 168 N.J.Super. 508, 512, 403 A.2d 921 (App.Div.1979).
McEwan did not even file his application for subdivision approval until after the Wantage governing body had adopted the new ordinance changing the zoning applicable to his property. Therefore, he could not have relied upon the prior zoning in submitting that application.
We assign no significance to the fact that the Board approved McEwan's application three days before the effective date of the new zoning ordinance. The Board should have required McEwan to submit an application that conformed with the new ordinance, or sought any required variances from its provisions, rather than rushing to approve his application before the ordinance's effective date.
The Land Use Board's actions in this case were similar to the planning board actions we criticized in Willoughby v. Planning Board of Township of Deptford, 306 N.J.Super. 266, 703 A.2d 668 (App.Div. 1997). In that case, a planning board granted site plan approval for a development project that would be prohibited under an amendment to the zoning ordinance that was then pending before the governing body. Although we reversed the judgment dismissing a challenge to this approval on other grounds, we indicated in the course of our opinion that the planning board should not have proceeded to review the application for site plan approval under a zoning ordinance the governing body was on the verge of amending to prohibit the landowner's proposed use:
The Municipal Land Use Law confers the responsibility for determining a municipality's land use plan upon the governing body, composed of the people's elected representatives. A planning board is a subordinate municipal agency whose role is limited "to effectuat[ing] the goals of the community as expressed through its zoning and planning ordinances." Consequently, when a governing body proposes to amend a zoning ordinance, a planning board should not rush to grant development approvals under existing zoning before the amendments to the municipality's land use ordinance can take effect. In this case the Planning Board easily could have deferred hearings on Wolfson's site plan application for a brief period to determine whether the proposed ordinance rezoning Wolfson's property would be adopted. Instead, it attempted to preempt the proposed rezoning by completing its review of Wolfson's application before the Township Council could act and by subsequently granting site plan approval after the amendment to the zoning ordinance had been adopted but before it became effective. Therefore, we note our disapproval of the Planning Board's attempt to usurp the Township Council's preeminent role in determining the municipality's land use plan.
[Id. at 279, 703 A.2d 668 (citations omitted).]
The circumstances of the Wantage Land Use Board's consideration of McEwan's subdivision application were even more egregious than in Willoughby. The governing body had not simply proposed the adoption of a new zoning ordinance before McEwan submitted his application but had *216 already adopted that ordinance to implement the municipality's new master plan. Under these circumstances, the Land Use Board should have required McEwan to submit his application under the new zoning ordinance.
We reject McEwan's argument that his subdivision approval is protected by N.J.S.A. 40:55D-52(a). This subsection of the MLUL provides in pertinent part:
The zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer [pursuant to N.J.S.A. 40:55D-49]... shall not be changed for a period of two years after the date on which the resolution of final approval is adopted[.]
[Emphasis added.]
The Board's resolution approving McEwan's application was not adopted until November 25, 2003, more than three months after the effective date of the new zoning ordinance that his proposed development failed to comply with. Therefore, that approval was not protected by N.J.S.A. 40:55D-52(a).
We also reject McEwan's argument that there were "equitable considerations" that weighed against invoking the time of decision rule. McEwan was aware when he submitted his application that the amended zoning ordinance had already been adopted and would become effective in only a month and a half. Therefore, he could not reasonably have assumed that the Board would apply the former zoning ordinance in its consideration of his application.
Because we conclude that the Land Use Board erred by granting McEwan's application for subdivision approval under the former zoning for the R-1 zone rather than requiring him to comply with or seek variances from the requirements established by the new zoning ordinance, we have no need to consider plaintiff's other arguments regarding the Board's approval of the subdivision application and associated variances.
Accordingly, we reverse the judgment dismissing plaintiff's complaint and remand for entry of a judgment in plaintiff's favor invalidating the subdivision and other land use approvals granted to McEwan.
NOTES
[1] The new zoning ordinance increased the lot width requirement from 150 to 250 feet. The bulk variance granted to McEwan approved a lot width of only twenty-five feet for the two flag lots.